1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CANDIE WHITE, individually and on          No.  2:16-cv-02439-KJM-GGH
     behalf of all others similarly situated,
12
                  Plaintiff,
13
          v.                                    ORDER
14
     FIRST STEP GROUP LLC, DOES 1–10,
15   and each of them,[1]

16                Defendants.

17

18

19          This putative class action involves a debt collection agency's attempts to over-

20   collect on time-barred debts.  Named plaintiff Candie White claims defendant First Step Group

21   LLC ("First Step") violated federal and state law when it attempted to collect an unenforceable

22   _____

23          [1] The Ninth Circuit provides "'[plaintiffs] should be given an opportunity through
     discovery to identify [] unknown defendants'" "in circumstances . . . 'where the identity of the
24   alleged defendant[] [is] not [] known prior to the filing of a complaint.'"  Wakefield v.
     Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642
25   (9th Cir. 1980)) (modifications in original). Plaintiff is cautioned that such defendants will be
     dismissed where "'it is clear that discovery would not uncover the identities, or that the complaint
26   would be dismissed on other grounds.'"  *Id.* (quoting *Gillespie,* 629 F.2d at 642).  Federal Rule of
     Civil Procedure 4(m), as recently amended, provides for dismissal of defendants not served
27   within 90 days of filing of the complaint unless plaintiff shows good cause. *See Glass v. Fields,*
     No. 1:09-cv-00098-OWW-SMS PC, 2011 U.S. Dist. LEXIS 97604 (E.D. Cal. Aug. 31, 2011);
28   *Hard Drive Prods. v. Does*, No. C 11-01567 LB, 2011 U.S. Dist. LEXIS 109837, at *2-4 (N.D.
     Cal. Sep. 27, 2011).

debt in an amount to which she never agreed.  First Am. Compl. (FAC), ECF No. 7.  First Step moves to dismiss the operative first amended complaint.  Mot., ECF No. 9.  White opposes the motion.  Opp'n, ECF No. 11.  First Step filed a reply.  Reply, ECF No. 12.  The court submitted the matter without hearing.  ECF No. 14.  For the reasons discussed below, the court DENIES the motion.

I.    BACKGROUND

    A.    First Step's Debt Collection Letter

        On or about May 26, 2016, First Step sent White a debt collection letter in an effort to collect a debt she allegedly owed to Cach, LLC, in the amount of $17,779.31.  FAC ¶¶ 11–12.  In the letter, First Step offered White three "payment options" that White could accept as "settlement" for the alleged debt.  *Id.* ¶¶ 13–14.

        More specifically, the letter stated, "[y]our account has been placed with our office for collection.  We have been authorized to settle your outstanding obligation for substantially less than the current balance owed, or set up a payment arrangement that best fits your situation."  *See id.* Ex. A (Collection Letter), ECF No. 7.  The letter explained, "[w]e are not obligated to renew these offers," and then presented three "options" for repayment.  *Id.*  Depending on when payment is made, the options are for a 65 percent reduction of the current balance, a 50 percent reduction, or for payment in full.  *Id.*  Below these options, the letter states:

> THE LAW LIMITS HOW LONG YOU CAN BE SUED ON A DEBT.  BECAUSE OF THE AGE OF YOUR DEBT, CACH, LLC, WILL NOT SUE YOU FOR IT, AND CACH, LLC, WILL NOT REPORT IT TO ANY CREDIT REPORTING AGENCY.  WE ARE NOT A LAW FIRM AND WE CANNOT GIVE YOU LEGAL ADVICE. SHOULD YOU CHOOSE TO ACCEPT ONE OF THESE SETTLEMENTS, YOU MAY WISH TO CONSULT WITH AN ATTORNEY ABOUT THE CONSEQUENCES OF THE SETTLEMENT, IF ANY.

FAC ¶ 14; *id.* Ex. A (Collection Letter).

        White alleges the letter excluded several pieces of critical information.  The letter failed to disclose the age of the debt, that there is a four year statute of limitations that applies to the debt, and that the debt was time-barred under the applicable statute of limitations.  FAC ¶ 15.  The letter also failed to explain that making any payment on the time-barred debt would revive

the statute of limitations and permit a suit against White to recover the debt in full. *Id.* White was confused and misled by First Step's use of the word "settlement" and believed that the letter threatened legal action in connection with First Step's effort to collect the alleged debt. *Id.* ¶ 16.

B.      White's Debt

Cach, LLC, was not the original owner of White's debt. Providian Bank made an initial loan to White in 2003. *Id.* ¶ 24. In 2006, Washington Mutual purchased Providian Bank and, along with it, White's debt. *Id.* ¶ 26. In 2008, Washington Mutual went bankrupt, and JP Morgan Chase purchased all of Washington Mutual's assets, including White's debt. *Id.* ¶ 28. JP Morgan Chase subsequently sold the debt to Cach, LLC, who then retained First Step for the purposes of collecting on the debt. *Id.* ¶¶ 29–30.

The amount of White's alleged debt has increased significantly since 2003. The amount of the original loan by Providian Bank was for $5,000. *Id.* ¶ 24. The original loan agreement did not expressly provide for annual interest greater than 10 percent. *Id.* ¶ 25. White made timely payments until 2006, after which Washington Mutual began to charge penalties and interest that were never part of the original loan agreement. *Id.* ¶ 27. According to Washington Mutual, White's debt was approximately $8,000. *Id.* At no point did White agree to interest and fees that could increase the debt from the original loan amount of $5,000 to $17,779.31. *Id.* ¶ 31. White believes First Step knew or ignored the clear possibility that the amount First Step sought to collect reflected an illegal rate of interest. *Id.* ¶ 32.

C.      White's Claims

White alleges it was First Step's common practice to send out form debt collection letters to consumers nationwide in its attempts to collect time-barred debts and to collect illegal fees and costs in excess of the maximum amount permitted under the law. *Id.* ¶ 35. White brings three claims on behalf of a putative class: (1) violations of the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, for First Step's use of deceptive language and material omissions in its debt collection letters; (2) violations of FDCPA for First Step's attempted collection of amounts in gross excess of those permissible by law or the loan agreement; and (3) violations of the California Rosenthal Fair Debt Collection Practices Act

3

(RFDCPA), Cal. Civ. Code § 1788 *et seq.* *Id.* ¶¶ 51–65. The third claim under RFDCPA is wholly derivative of the first two claims under FDCPA. *Id.* ¶ 65 ("Each of the above named violations of the FDCPA is also a violation of the RFDCPA.").

       D.     <u>First Step's Motion</u>

First Step moves to dismiss the first amended complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See generally* Mot. First Step argues the debt collection letter adequately discloses the nature of the time-barred debt and that the amount First Step sought to collect was merely the amount Cach, LLC, reported it was owed. Mem. P. & A. 2, ECF No. 9-1. Below, after laying out the standard applicable to First Step's motion, the court proceeds to consider the relevant provisions of FDCPA and RFDCPA.

## II.   <u>LEGAL STANDARD</u>

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

4

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).  This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) *quoted in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001).  A court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment.   *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

III.     THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

The federal FDCPA was enacted in 1977 as a broad remedial statute designed to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Gonzales v. Arrow Fin. Services, LLC*, 660 F.3d 1055, 1060–61 (9th Cir. 2011) (quoting 15 U.S.C. § 1692(e)).  The Act comprehensively regulates debt collectors, *Tourgeman v. Collins Financial Servs., Inc.*, 755 F.3d 1109, 1119 (9th Cir. 2014), imposing affirmative obligations on collectors and broadly prohibiting abusive practices, *Gonzales*, 660 F.3d at 1061.  The FDCPA is a strict liability statute and does not ordinarily require proof of intentional violation.  *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011).  Because the FDCPA "is a remedial statute, it should be construed liberally in favor of the consumer."  *Clark v. Capital Credit & Collection Servs. Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006).

Most relevant here, the Act prohibits the use of "any false, deceptive, or misleading representation or means" in connection with the collection of a debt, 15 U.S.C.

§ 1692e, and any "unfair or unconscionable means" to collect or attempt to collect a debt, *id.*
§ 1692f.  Each of these provisions provides a non-exhaustive list of potential violations.
Misleading representations under section 1692e include: "[t]he false representation of the
character, amount, or legal status of any debt," *id.* § 1692e(2)(A); "[t]he representation or
implication that nonpayment of any debt will result in . . . the seizure, garnishment, attachment, or
sale of any property or wages" of a debtor, *id.* § 1692e(4); "[t]he threat to take any action that
cannot legally be taken or that is not intended to be taken," *id.* § 1692e(5); and "[t]he use of any
false representation or deceptive means to collect or attempt to collect any debt or to obtain
information concerning a consumer," *id.* § 1692e(10).  "Unconscionable," as used in
section1692f, extends to "[t]he collection of any amount (including any interest, fee, charge, or
expense incidental to the principal obligation) unless such amount is expressly authorized by the
agreement creating the debt or permitted by law," *id.* § 1692f(1).

Allegations under sections 1692e and 1692f are both analyzed from the
perspective of the "least sophisticated debtor."  *Wade v. Regl. Credit Ass'n*, 87 F.3d 1098, 1100
(9th Cir. 1996); *Swanson v. S. Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988);
*Baker v. G.C. Services Corp.*, 677 F.2d 775, 778 (9th Cir. 1982).  A claim under section 1692e,
for example, "takes into account whether the least sophisticated debtor would likely be misled by
a communication." *Davis v. Hollins L.*, 832 F.3d 962, 964 (9th Cir. 2016) (citing *Tourgeman*,
755 F.3d at 1119).  This standard is lower than a reasonableness standard, *Tourgeman*, 755 F.3d
at 1119, and the "least sophisticated debtor may be uninformed, naive, and gullible," *Evon v. Law
Offices of Sidney Mickell*, 688 F.3d 1015, 1027 (9th Cir. 2012).  Nonetheless, the debtor's
"interpretation of a collection notice cannot be bizarre or unreasonable," and an interpreting court
must presume debtors have "a basic level of understanding and willingness to read [the relevant
documents] with care" in order to safeguard bill collectors from liability for consumers' "bizarre
or idiosyncratic interpretations of collection notices." *Id.* (quoting *Clomon v. Jackson*, 988 F.2d
1314, 1319 (2d Cir. 1993) and *Campuzano–Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294,
298 (3rd Cir. 2008)).

A.    Collection of Time-barred Debts under FDCPA (First Claim)

White alleges First Step violated various provisions of sections 1692e and 1692f by using the term "settlement" in its collection letter, offering several payment options and neglecting to disclose that any payment would revive the statute of limitations. FAC ¶¶ 51–56 (claim 1). First Step contends the collection letter does not violate the FDCPA as a matter of law. Mot. 5–8.

The Ninth Circuit has not squarely addressed the question presented here: whether the use of "settlement" in a collection letter, along with the failure to disclose the time-barred nature of a debt and the potential for revival of the debt, may violate the FDCPA. As a result, the court first turns to the interpretations of the two federal agencies responsible for enforcing the FDCPA and then to the Circuit courts that have relied on the agencies' interpretation to address this issue.

1.    Federal Agencies' Interpretations

White points to interpretations from the Federal Trade Commission (FTC) and the Consumer Financial Protection Bureau (CFPB) and argues these interpretations must be given *Chevron* deference or, at the least, *Skidmore* deference. Opp'n 18 (citing *Chevron USA Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843 (1984); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

Under *Chevron*, where Congress has not clearly spoken, a reviewing court must defer to an agency's construction of a statute so long as it reasonable. *Chevron*, 467 U.S. at 843. However, such deference applies only "when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1012 (9th Cir. 2006) (quoting *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001)). Under FDCPA, Congress provided rulemaking authority to the CFPB but not the FTC. *See* 15 U.S.C. § 1692*l*(d) ("[T]he [CFPB] may prescribe rules with respect to the collection of debts by debt collectors . . . ."). But the CFPB material discussed below references only proposed rules that have not been promulgated. Because the material on which White relies

from both the FTC and the CFPB was not promulgated in the exercise of either agency's rulemaking authority, *Chevron* does not apply. *Cf. Hall v. U.S. E.P.A.*, 273 F.3d 1146, 1156 (9th Cir. 2001) ("Interpretations of the Act set forth in such non-precedential documents are not entitled to *Chevron* deference.").

Even where *Chevron* does not apply, the persuasiveness of an agency's pronouncements may nevertheless entitle it to respect. *Fed. Trade Comm'n v. Garvey*, 383 F.3d 891, 903 (9th Cir. 2004) (citing *Christensen v. Harris County*, 529 U.S. 576, 587 (2000)) ("[I]nterpretations contained in formats such as opinion letters are 'entitled to respect' under our decision in *Skidmore* [], but only to the extent that those interpretations have the 'power to persuade.'" (internal citations omitted)); *cf. Fed. Trade Comm'n v. AT & T Mobility LLC*, 835 F.3d 993, 1003 (9th Cir. 2016) (although FTC may be entitled to *Skidmore* deference in its enforcement of the FTC Act, finding FTC's interpretation unpersuasive). Because the court finds the FTC's and CFPB's interpretations persuasive, it applies *Skidmore*.

Congress has charged both the FTC and the CFPB with various responsibilities under FDCPA. *See, e.g.*, 15 U.S.C. § 1692*l*(c) (FTC has authority to issue advisory opinions, commentary and letter opinions over interpretation of FDCPA); 15 U.S.C. § 1692*l*b(6) (CFPB has authority to "prescribe rules with respect to the collection of debts by debt collectors"); *id.* § 1691f (CFPB must provide annual reports to Congress regarding federal government's efforts to implement FDCPA). The Ninth Circuit has explained that the FTC in particular, in light of its "accumulated expertise" regarding the "expectations and beliefs of the public, especially where the alleged deception results from an omission of information instead of a statement," is "generally in a better position than the courts to determine when a practice is deceptive." *Simeon Mgt. Corp. v. Fed. Trade Comm'n*, 579 F.2d 1137, 1145 (9th Cir. 1978).

Given the responsibilities and expertise of the FTC and the CFPB, the court briefly summarizes their interpretations, recommendations and proposals regarding the collection of time-barred debts. The FTC has noted "in many circumstances [] a collection attempt [of a time-barred debt] may create a misleading impression that the collector can sue the consumer in court to collect the debt," in violation of the FDCPA. FTC Report 2010. To avoid such confusion, the

8

FTC recommends collectors "disclose clearly and prominently to consumers before seeking payment on such time-barred debt that because of the passage of time, they can no longer sue in court to collect the debt or otherwise compel payment." *Id.* at 25–26. The CFPB largely takes the same position as the FTC, and is considering[3] a proposal to require time-barred debt disclosures that include brief, plain-language statements informing the consumer that, because of the age of the debt, the debt collector cannot sue to recover it. CONSUMER FINANCIAL PROTECTION BUREAU, SMALL BUSINESS REVIEW PANEL FOR DEBT COLLECTOR AND DEBT BUYER RULEMAKING 20 (2016) (CFPB Proposals 2016).

As to the collection of time-barred debts in states where partial payment can revive the debt, the FTC explains these efforts "may create a misleading impression as to the consequences of making such a payment," again in violation of the FDCPA. FTC Report 2010 at 28. In order to prevent such a misimpression, collectors need to "disclose clearly and prominently to consumers prior to requesting or accepting such payments that (1) the collector cannot sue to collect the debt and (2) providing a partial payment would revive the collector's ability to sue to collect the balance." *Id.*; *see also* FED. TRADE COMM'N, THE STRUCTURE AND PRACTICE OF THE DEBT BUYING INDUSTRY 47 (2013) (FTC Report 2013). The CFPB similarly acknowledges that many consumers do not know, and may even find counterintuitive, the effects of making a partial payment on a time-barred debt. CFPB Proposals 2016 at 20. As a result, the CFPB is considering a proposal to altogether prohibit collection on a time-barred suit unless the collector waives its right to subsequently sue on the debt. *Id.* at 22.

In sum, the FTC and the CFPB both have recognized many consumers may not understand the nature of a time-barred debt with respect to the creditor's inability to sue or the debtor's ability to revive the debt and make themselves subject to suit anew. The FTC specifically finds collection letters for time-barred debts subject to revival may mislead many

---

[3] The CFPB continues to consider the proposed rules discuss here. *See* Consumer Financial Protection Bureau, *Spring 2017 Rulemaking Agenda*, https://www.consumerfinance.gov/about-us/blog/spring-2017-rulemaking-agenda/ (last visited September 15, 2017).

consumers in violation of the FDCPA, and the CFPB is in the process of considering proposals to require further disclosure regarding the collection attempts. The court finds these interpretations persuasive; they support the conclusion that attempts to collect such as First Step's here may be actionable under FDCPA.

In arguing for a more flexible interpretation of the agencies' conclusions, First Step points to two consent decrees, entered in cases in which the FTC or CFPB were involved, that suggest it is enough for a debt collector to disclose it "will not" sue on the debt. Reply 2–3 (citing consent decrees filed in *United States v. Asset Acceptance, LLC*, Case No. 8:12-cv-00182 (M.D. Fla. Jan. 31, 2012), and *Portfolio Recovery Associates, LLC*, CFPB No. 2015-CFPB-0023 (Sept. 9, 2015)). However, a consent decree, which is fundamentally a settlement agreement between the parties, necessarily reflects a compromised position. As a result, both consent decrees are entitled to limited weight. The *Asset Acceptance* decree, while approved by a federal court, does not reflect the court's measured evaluation. *See* Case No. 8:12-cv-00182, Dkt. 3 (in form order, and without discussion, granting request to enter consent decree one day after case was filed). In any event, the "will not" language conflicts with the express interpretations of the FTC and the CFPB as reflected in their agency reports and rule proposals, respectively. *See* FTC Report 2010 at 25–26; FTC Report 2013 at 47; CFPB Proposals 2016 at 20.

There is a critical distinction between a collector asserting it "will not" sue from one asserting it "cannot" sue. *See* FTC Report 2013 at 47 n.194 (citing 2010 study finding consumers who were told debt "cannot be enforced against you through court action" were significantly more likely to decline to pay). "Will not" implies both that the collector has the power to sue and that nothing precludes it from changing its mind later, whereas "cannot sue" implies neither. This distinction may make all the difference at summary judgment. *Smith v. Convergent Outsourcing, Inc.*, 15-12756, 2016 WL 6524148, at *3 (E.D. Mich. Nov. 1, 2016) (finding debt collector did not violate the FDCPA when issuing a letter noting "we cannot sue to collect this debt"). Against the weight of agency interpretations, and at this stage, First Step has not provided sufficient authority to permit it to disclose anything less than it cannot sue.

The court next turns to Circuit interpretations of these issues, to the extent Circuits have addressed them. As explained below, most of the relevant authority, and the more recent trend among that authority, adopts the agencies' interpretations explained above.

### 2. Other Circuits' Interpretations

Federal courts are divided on whether efforts to collect an unenforceable debt, if unaccompanied by a threat of litigation, violate the FDCPA. *See Finley v. Dynamic Recovery Sols. LLC*, 14-CV-04028-TEH, 2015 WL 3750140, at *4 (N.D. Cal. June 15, 2015) (citing *Alborzian v. JPMorgan Chase Bank, N.Am.*, 235 Cal. App. 4th 29, 36–37 (Cal. Ct. App. 2015) (collecting cases)). In the Third and Eighth Circuits, a collection letter is actionable under the FDCPA only if it is accompanied by an overt threat of litigation. *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28 (3d Cir. 2011) (the FDCPA claim "hinges on whether [the debt collector's] letter threatened litigation"); *Freyermuth v. Credit Bureau Servs.*, Inc., 248 F.3d 767, 771 (8th Cir. 2001) (case law on this issue "turn[s] on the threat, or actual filing, of litigation"). The three Circuit courts to consider the question since *Huertas* have reached differing conclusions.

The Sixth Circuit has found an actionable FDCPA claim based on a collection letter that provided a "settlement offer" as to a time-barred debt. *Buchanan v. Northland Group, Inc.*, 776 F.3d 393 (6th Cir. 2015). The court agreed with the Third and Eighth Circuits that by itself an "attempt to collect a time-barred debt is not a thinly veiled threat to sue." *Id.* at 399. However, because the letter before the court offered to "settle" and invited partial payments, the Sixth Circuit found it to be very different from the ones considered by the other Circuits, neither of which addressed "the possibility that consumers might still be confused about the enforceability of a debt or the pitfalls of partial payment." *Id.* 399–400. As the court explained, the settlement offer may "falsely impl[y] that the underlying debt is enforceable in court," and the invitation for partial payment may lead an unsophisticated consumer to "assume from the letter that some payment is better than no payment," which is not true in a state where partial payment may revive the entirety of a time-barred debt. *Id.* at 399.

The Seventh and Fifth Circuits have departed even more starkly from the Third and Eighth Circuits. *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014);

11

*Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507 (5th Cir. 2016). As the Seventh Circuit explained, the FDCPA clearly extends beyond improper threats to sue:

> The proposition that a debt collector violates the FDCPA when it misleads an unsophisticated consumer to believe a time-barred debt is legally enforceable, regardless of whether litigation is threatened, is straightforward under the statute. Section 1692e(2)(A) specifically prohibits the false representation of the character or legal status of any debt. Whether a debt is legally enforceable is a central fact about the character and legal status of that debt. A misrepresentation about that fact thus violates the FDCPA. Matters may be even worse if the debt collector adds a threat of litigation, *see* 15 U.S.C. § 1692e(5), but such a threat is not a necessary element of a claim.

*Id.* at 1020. Noting that its decision departed from the other Circuits, the Seventh Circuit explained "the statute cannot bear the reading that those courts have given it." *Id.*. The court continued:

> The plain language of the FDCPA prohibits not only threatening to take actions that the collector cannot take, but also the use of any false, deceptive, or misleading representation, including those about the character or legal status of any debt. If a debt collector stated that it *could* sue on a time[-]barred debt but was promising to forbear, that statement would be a false representation about the legal status of that debt.

*Id.* at 1021 (emphasis in original) (alteration added). The Fifth Circuit recently adopted in full the Seventh Circuit's interpretation of the FDCPA. *Daugherty*, 836 F.3d at 513.

In sum, three recent Circuit decisions have found a collection letter that offers to "settle" and fails to address the effects of a partial payment may violate the FDCPA. *Daugherty*, 836 F.3d 507; *Buchanan*, 776 F.3d 393; *McMahon*, 744 F.3d 1010. The two earlier decisions from the Third and Eighth Circuits do not address either of these features of a collection letter. *Huertas*, 641 F.3d 28; *Freyermuth*, 248 F.3d 767. Thus, the balance of Circuit authority, and all of the Circuit authority directly on point, finds an actionable claim under the FDCPA

The court next turns to First Step's debt collection letters.

### 3. First Step's Collection of Time-Barred Debts

As noted, White seeks to represent a nationwide class of debtors who have received similar letters to the one she received from First Step. FAC ¶¶ 23, 35, 37. The letter she received said First Step had been "authorized to settle" the alleged debt and provided multiple

options for White's partial payment. *Id.* Ex. A (Collection Letter). The letter failed to disclose that the debt was time-barred by the four-year statute of limitations applicable in California. *Id.* ¶ 15. The letter only generally explained "the law limits how long you can be sued on a debt" and that "because of the age of the debt, Cach, LLC, will not sue you for it." *Id.* Ex. A (Collection Letter). At this stage, it is plausible that the least sophisticated debtor could believe the debt is enforceable, a misrepresentation about the legal status of the debt that would violate section 1692e(2)(A). *See McMahon*, 744 F.3d at 1021; *Daugherty*, 836 F.3d 513; FTC Report 2010 at 25.

The letter also failed to disclose the fact that the debt could be revived under California law by a partial payment, making White subject to suit by Cach, LLC, if she took advantage of any one of the payment options offered in the letter. FAC ¶ 15. This omission could mislead the least sophisticated consumer to "assume from the letter that some payment is better than no payment," which is simply not the case in a state where partial payment may revive the entirety of a time-barred debt. *Buchanan*, 776 F.3d at 399; FTC Report 2010 at 28. The letter's critical silence on this point could therefore constitute a "false, deceptive, or misleading representation" about the character of the debt, in violation of section 1692e. Particularly where White alleges First Step engaged in a "systematic scheme to mislead consumers into making payments on time-barred debts, so that the statute of limitations on these otherwise uncollectable debts is renewed," FAC ¶ 23, the omission also could constitute a "false, deceptive, or misleading . . . means" of collection, in violation of section 1692e, or an "unfair or unconscionable means" to collect the debt, in violation of section 1692f.

The court also does not reject the notion that the letter may be interpreted by the least sophisticated debtor as an implicit threat to sue. The letter makes repeated offers to "settle" and suggests the recipient "may wish to consult with an attorney." *Id.* Ex. A (Collection Letter). As the Sixth Circuit has explained, "formal and informal dictionaries alike contain a definition of 'settle' that refers to concluding a lawsuit." *Buchanan*, 776 F.3d at 399 (citing, *inter alia*, *Webster's Third New International Dictionary* 2079 (2002); *Black's Law Dictionary* 1372 (6th ed. 1990)). Although the letter's language may at a minimum misrepresent that the debt may still

13

be enforceable in court, *id.*, it may further be interpreted by the least sophisticated consumer as an implicit threat to exercise an enforcement right. *See Perretta v. Capital Acquisitions & Mgmt. Co.*, No. C–02–05561 RMW, 2003 WL 21383757, at *3 (N.D. Cal. May 5, 2003) (finding letter, followed up with conversation asserting "further steps would be taken," could be threatening to least sophisticated consumer); *cf. Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996) (finding collection letter explaining that failure to pay could adversely affect her credit reputation did not constitute threat to sue). The letter here does explain that Cach, LLC, the debt holder, "will not sue you" for the debt, *id.,* but this scant assurance may seem more like an empty promise to a debtor receiving a collection agency's "request" to pay nearly four times the amount of the original loan. Moreover, First Step, as a collection agency, and not Cach, LLC the debt holder, sent the letter. If the least sophisticated debtor were to read the agency's words as an implicit threat to sue, those words would constitute a "threat to take any action that cannot legally be taken or that is not intended to be taken," in violation of section 1692e(5). *Wade*, 87 F.3d at 1100.

First Step's invocation of language approved by the court in *Buchanan* is unavailing. *See* Mem. P. & A. 7; Reply 2–3. It is true that the Sixth Circuit favorably cited the collection agency's new language which, similar to First Step's letter here, explained "[t]he law limits how long you can be sued on a debt. Because of the age of your debt, LVNV Funding LLC, will not sue you for it . . . ." *Buchanan*, 776 F.3d at 400. But the Sixth Circuit pointed to this language only to demonstrate that a collector could provide greater disclosure to debtors without giving legal advice. *Id.* (explaining it "is not a herculean task" to provide statute of limitations information without giving legal advice). The language in the updated letter was not the subject of the Sixth Circuit's opinion finding an actionable claim under the FDCPA. *Id.*

In sum, White has sufficiently pled multiple theories supporting a viable claim under the FDCPA. The court therefore DENIES First Step's motion as to White's first claim.

B.    <u>Over-Collection of Debts Under FDCPA (Second Claim)</u>

White also alleges First Step violated various provisions of sections 1692e and 1692f by attempting to collect an amount in "gross excess of anything permitted by law or

14

agreement." FAC ¶¶ 57–61 (claim 2). First Step moves to dismiss White's second claim on the grounds that First Step had no knowledge the debt amount was incorrect and was entitled to rely on the debt amounts reported to it by Cach, LLC, as the owner of the debt. Mot. 8–9.

White presents at least two viable theories supporting a claimed FDCPA violation based on First Step's alleged attempt to over-collect on her state debt. For both theories, she asserts she never agreed to pay interest or fees that could increase her loan amount from $5,000 to $17,799.31. FAC ¶¶ 25, 31. Under the first theory, even if Cach, LLC, actually reported to First Step that White owed $17,799.31, First Step attempted to collect an amount that was not authorized by the original loan agreement. This would constitute a violation of section 1692f(1), which prohibits the collection of any amount not expressly authorized by the agreement. 15 U.S.C. § 1692f(1); *see also* 15 U.S.C. § 1692f (prohibiting any "unfair or unconscionable means" in the collection of a debt). Under the second theory, assuming Cach, LLC did not report to First Step that White owed as much as $17,799.31, First Step misrepresented the amount of the debt White owed. This would constitute a violation of section 1692e(2)(A), which prohibits "[t]he false representation of the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Because sections 1692e and 1692f are strict liability provisions, *McCollough*, 637 F.3d at 948, First Step is liable for the alleged violations if they are proved up, regardless of whether the violations were knowing or intentional. *Clark*, 460 F.3d at 1175; *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010). In any event, White specifically alleges First Step's violations were effected knowingly and intentionally. FAC ¶ 58. White adequately alleges First Step violated FDCPA when it attempted to collect an amount far surpassing the original debt.

First Step's argument that it was entitled to reasonably rely on the debt amount as reported to it by Cach, LLC, *see* Mot. 8–9; Reply 5–7, is unavailing in the face of the FDCPA as a strict liability statute that does not require the collector's knowing or intentional violation. The argument also presents a factual question regarding First Step's reasonable reliance that is not susceptible to disposition at this stage.

To the extent First Step's reasonable reliance argument asserts an affirmative defense, such an assertion does not support dismissal here. Under the FDCPA's bona fide error defense, a debt collector may not be held liable "if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). In order to establish this defense, a collector must show its reliance on a creditor's representation is reasonable, *Clark*, 460 F.3d at 1174, and produce evidence of "reasonable preventive procedures" aimed at avoiding errors, *Reichert v. National Credit Systems, Inc.*, 531 F.3d 1002, 1006 (9th Cir. 2008). Notwithstanding these verification procedures, the FDCPA does not impose upon a collector a duty to independently investigate a debt owner's reported claims. *Clark*, 460 F.3d at 1174; *see also Palmer v. I.C. Sys., Inc.*, C-04-03237 RMW, 2005 WL 3001877, at *8 (N.D. Cal. Nov. 8, 2005); *Ducrest v. Alco Collections, Inc.*, 931 F. Supp. 459, 462 (M.D. La. 1996). But it is the collector's burden to prove this affirmative defense, *Reichert*, 531 F.3d at 1006, and a motion to dismiss under Rule 12(b)(6) may be granted on the grounds of an affirmative defense only if the "defense raises no disputed issues of fact." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). First Step's indirect invocation of the bona fide error defense raises several issues of fact, including whether First Step reasonably relied on representations by the owner of the debt and whether First Step had adequate procedures to verify the amount of the debt. In light of these fact-specific inquiries, dismissal of White's second claim is not warranted at this stage.

IV.     DERIVATIVE RFDCPA CLAIM (THIRD CLAIM)

White also asserts a third claim under California's RFDCPA, as derivative of the federal claims under FDCPA. FAC ¶ 64 ("Each of the above named violations of the FDCPA is also a violation of the RFDCPA."). First Step moves for dismissal of this claim on the basis that the underlying FDCPA claims must also fail. Mot. 9.

RFDCPA explicitly incorporates FDCPA by reference. *See* Cal. Civ. Code § 1788.17; *Alborzian*, 235 Cal. App. 4th at 36; *Finley*, 2015 WL 3750140, at *5. Because White has adequately alleged claims under the FDCPA, she also has adequately alleged violations of her

derivative claim under the RFDCPA. The court need not separately address this claim. *See, e.g.*, *Davis v. Hollins L.*, 832 F.3d 962, 966 n.3 (9th Cir. 2016) ("Because the [RFDCPA] claim is derivative of the [FDCPA] claim, we do not address it separately.").

V.     <u>CONCLUSION</u>

The court DENIES First Step's motion to dismiss. An answer shall be due within fourteen (14) days of this order.

This resolves ECF No. 9.

IT IS SO ORDERED.

DATED: September 19, 2017.

_____
UNITED STATES DISTRICT JUDGE